### (September 8, 1972)

■ In the Matter of LAWRENCE H. COOKE, Respondent, v. JOHN P. LOMENZO, as Secretary of State of the State of New York, et al., Appellants, and NANETTE DEMBITZ et al., Respondents.— Judgment, Supreme Court, Albany County, entered August 25, 1972, reversed on the law and petition dismissed, without costs. The affidavits showed convincingly that unless the name of a candidate nominated by more than one party appears in the same vertical column the voting machine will not function properly. The net result of a drawing could

be that the petitioner's name would appear in different vertical columns. This could not be avoided unless following the drawing all the relative horizontal positions were changed to provide for the contingency. The eventual position of other candidates would thereby be affected against their wishes and at a time when they could no longer seek a drawing by lot. This lends strength to the argument made by respondent that the literal meaning of section 104 of the Election Law limiting the right of drawing to the situation where two or more candidates for the same position have been nominated by " one party ", should prevail. We believe that in this situation section 265 of the Election Law, which makes all provisions of the law subject to the practicalities of the voting machine, provides a sound basis for confirming the action taken by respondent, in view of the fact that his action was not prompted by any improper motive. Lastly, we find no authority for the directions contained in Special Term's opinion as to how the ballot should be set up. Capozzoli, J. (concurring). I vote for reversal, only because of the insistence of the Attorney-General, both in his papers and on the oral argument, that, if the petition is granted, the voting machines will not function properly and that a serious interference in the general voting is likely to result. Murphy, J. (dissenting). I disagree. By directing that the vertical and horizontal columns of candidates, as previously established by the Secretary of State, be determined by lot, Special Term precluded the possibility that the name of any candidate indorsed by more than one party would appear in separate columns. Accordingly, there is no possibility of machine malfunction due to the arrangement of the candidates' names and no voting machine limitations, in the circumstances here presented, justifying departure from the applicable provisions of the Election Law. (Cf. Election Law, § 265; *Matter of Greitzer* v. *Power,* 10 A D 2d 921.) The Secretary of State, pursuant to his customary procedures and in accordance with his interpretation of section 105 of the Election Law, placed the candidates of the Republican Party in the first row in the order in which they were certified to him. Because of the particular pattern of cross nominations here involved and in order to insure that no voter could vote for any candidate more than once, he also determined that the names of candidates receiving more than one party nomination were to appear in the same vertical column. The application of the aforesaid guidelines resulted in necessarily placing the names of candidates Cooke and Wachtler in third position. The trouble with the procedure adopted is that it deprived respondent Cooke of a substantial statuory right, without legal justification. Section 105 of the Election Law, merely provides that " In printing the names of candidates precedence shall be given to the candidate or candidates of the party which polled the highest number of votes for governor at the last preceding election for such officer, and so on." Nothing therein contained, however, requires that preference be given to any particular candidate of such party. All that is required is that a candidate of said party (in this instance the Republican Party) head each column. It is section 104 of said law which mandates the procedure to be followed in determining the order of placement. While the preparer of the ballot is authorized to make such initial determination, any candidate may make a timely demand that the order be determined by lot. Indeed, the Secretary of State recognized this requirement by holding a drawing for Democratic Party position but excluded petitioner Cooke, the very candidate who made the demand, therefrom. It is, of course, true that in permitting the candidates of the Democratic Party to have their order drawn by lot the order of placement of the other candidates may have to be changed because of the cross indorsements and voting machine limitations. However, I find this less offensive than the procedure adopted by the Secretary of State.

No candidate (as distinguished from a political party) has any statutory right to a particular position on the ballot, except as provided in section 104 of the Election Law. A candidate who waives his right to a drawing runs the risk of having to yield his position if this result is a necessary consequence of another candidate's election to exercise his statutory right. The Secretary of State has observed, in such connection, that if every candidate exercises his right to demand a drawing, the likelihood is that those indorsed by more than one party would have their names appear on different lines, resulting in the probability of machine malfunction and voter confusion. The short answer thereto is that the other candidates have not so elected in this case. And if such hypothetical situation should develop in the future, with the likelihood of the predicted consequences, then deviation from the statutory requirements would be permissible. (Election Law, § 265; *Matter of Greitzer* v. *Power*, 10 A D 2d 921, *supra*.) Finally, it has been argued that there is no statutory authority for the direction below of a drawing for columnar position rather than for party line position. While this is technically correct, Special Term has merely telescoped the relief granted. Recognizing the problems created by the cross indorsements and the limited capabilities of the voting machine, Special Term has accepted the Secretary of State's argument that the names of candidates with cross indorsements must appear in the same vertical column and has approved the columns he has established. All that now remains is a draw for columnar position. As I see it, the result would be the same as if the three Democratic Party candidates first drew for party position and the Secretary of State established the columns thereafter in accordance with his above-mentioned accepted guideline. Moreover, the ballot arrangement will now be determined on the basis of a draw, which candidate Cooke is entitled to by law, and not by the order of names submitted by a political party. In light of the foregoing, judgment appealed from should be affirmed. Concur — McGivern, J. P., Steuer and Tilzer, JJ.; Capozzoli, J., concurs in result in a concurring memorandum; Murphy, J., dissents in a dissenting memorandum. Judgment reversed, etc. [70 Misc 2d 1001.]